IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:12CV394-RJC-DSC

| | |
|---|---|
| TODD SAVAGE, ) | |
|       Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
|       Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #12-1), both filed November 16, 2012; and Defendant's "Motion for Summary Judgment" (document #16) and "Memorandum in Support ..." (document #17), both filed March 15, 2013. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[2]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

[2] Pursuant to the Pretrial Scheduling Order entered on September 17, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. See Document #11. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply to Social Security appeals.

# I. **PROCEDURAL HISTORY**

Plaintiff obtained Supplemental Security Income benefits ("SSI") at the age of six due to mental retardation. He was evaluated for continuing benefits through his eighteenth birthday on May 30, 2008. (Tr. 181-182). Pursuant to 20 CFR § 416.987, the Social Security Administration ("Agency") reviewed Plaintiff's eligibility when he attained age eighteen, applying the rules for adults who file new applications. The Agency determined that as of February 1, 2009, Plaintiff no longer qualified for SSI. (Tr. 184). The Agency affirmed that determination upon reconsideration. (Tr. 185). On July 2, 2009, a Disability Hearing Officer conducted a hearing at which Plaintiff and his mother testified. (Tr. 211-212). On July 7, 2009, the Disability Hearing Officer issued a decision finding that Plaintiff did not meet the standards for disability as an adult, and thus no longer qualified for SSI. (Tr. 211-219).

On January 27, 2010, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff and his mother testified. (Tr. 47-109). On May 13, 2010, the ALJ issued a decision finding that Plaintiff's disability ended on February 1, 2009 and that he had not become disabled after that date. (Tr. 27-46). Specifically, the ALJ found that Plaintiff reached age eighteen on May 30, 2008, and was eligible for SSI benefits as a child for the month preceding his eighteenth birthday. (Tr. 32). The ALJ also found that Plaintiff suffered from borderline intellectual functioning, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 33). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform a full range of work at all exertional levels. Because of

---

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

Plaintiff's borderline intellectual functioning, the ALJ found that he was limited to simple, routine, repetitive tasks involving unskilled work. (Tr. 36). The ALJ determined that Plaintiff had no past relevant work experience. (Tr. 41).

The ALJ then considered Plaintiff's age, limited education, work experience and RFC and concluded that Medical-Vocational Rule 204.00 directed a finding of not disabled.

Along with his Request for Review by the Appeals Council, Plaintiff submitted an IQ test and evaluation by Dr. Morris Britt dated October 25, 2010 and a psychiatric evaluation by Dr. Warren J. Steinmuller dated February 21, 2011. Both evaluations were commissioned by the Social Security Administration as part of Plaintiff's subsequent application for benefits.

By notice dated May 3, 2012, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on June 26, 2012. He assigns error to the ALJ's determination that he did not meet the requirements of Listing 12.05, his failure to obtain an evaluation of Plaintiff's depression, and his failure to take testimony from a Vocational Expert ("V.E."). Plaintiff also assigns error to the Appeals Council's decision not to grant review of the new evidence he submitted. See Plaintiff's "Memorandum in Support ..." at 2 (document #12-1). The parties' cross- motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456

(4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" at any time, as that

4

term of art is defined for Social Security purposes.[4] Plaintiff contends that his condition meets Listings 12.05B and 12.05C regarding mental retardation.[5] The ALJ found that Plaintiff did not meet either of those Listings. (Tr. 33-34).

Adult claimants are deemed disabled whenever they meet or medically equal the criteria of a Listing. 20 CFR §§ 416.920(d), 416.925 & 416.926 (2012). Claimants bear the burden of production and the burden of proof on this issue, as they do at all four initial steps of the Agency's five-step sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). In order to sustain this burden, claimants "must present medical findings equal in severity to *all* the criteria" for the pertinent Listing. Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original), superseded by statute on other grounds.

Listing 12.05 requires a showing of "significantly subaverage general intellectual functioning with deficits of adaptive functioning initially manifested . . . before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. I § 12.05 (2012). Although the ALJ did not make a finding concerning this threshold requirement in Listing 12.05, he did emphasize evidence indicating that Plaintiff "seem[ed] to have attained a successful level of adaptive functioning." (Tr. 39-40). In any event, Plaintiff does not assign error to the ALJ's determination of this threshold requirement.

---

[4] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[5] On January 28, 2013, the Agency formally proposed replacing the term "mental retardation" in Listing 12.05 with "intellectual disability" because the former term "has negative connotations, has become offensive to many people, and often results in misunderstandings about the nature of the disorder and those who have it." Change In Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 5755, 5755-5756 (proposed Jan. 28, 2013). This proposal is currently pending.

This Listing also requires the applicant to meet one of four additional sets of criteria. Id. As stated previously, criteria B and C are at issue in this case. Listing 12.05B requires "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. I § 12.05B (2012). Listing 12.05C requires both (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. I § 12.05C (2012).

"In cases where more than one IQ is customarily derived from the test administered, [the Agency] use[s] the lowest of those in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. I § 12.00D.6.c (2012). In cases involving the assessment of a child, the governing regulation provides in pertinent part that IQ test results essentially expire after either one or two years (depending upon the age of the child at the time of assessment). 20 C.F.R. Pt. 404, Subpt. P, App. I § 112.00D.10 (2012).[6]

The ALJ found that Plaintiff did not have "a valid verbal, performance, or full scale IQ of 59 or less." (Tr. 33). Substantial evidence supports that finding. Plaintiff's IQ has been tested several times over the years. None of his childhood subtest scores were fifty-nine or less. In December 2008, Plaintiff had a consultative examination ("2008 Evaluation") by Melissa Zhiss, MA, and Angela Hargrow, Ph.D. (Tr. 372-376). He was eighteen at that time. In this evaluation, Plaintiff attained a verbal IQ score of seventy-one, a performance IQ score of seventy-nine, and a full scale IQ score of seventy-three. (Tr. 374). The ALJ referenced those scores in concluding that Plaintiff did not have a valid subtest score of fifty-nine or less (Tr.

---

[6]"Generally, the results of IQ tests tend to stabilize by the age of 16. . . . IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current . . . for 1 year if at 40 or above." 20 C.F.R. Pt. 404, Subpt. P, App. I § 112.00D.10 (2012).

34).

The ALJ also considered the IQ scores reported by Roslyn Walker, MA based upon an evaluation in October 2009 ("2009 Evaluation"), when Plaintiff was nineteen years old (Tr. 112-119). The lowest of these subtest scores was less than fifty-nine. (Tr. 115). However, the ALJ found that this score was not "valid" within the meaning of Listing 12.05B. (Tr. 33-34).

An ALJ is permitted "to weigh conflicting IQ test results…." Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012) (citing Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987)). In Murphy, the Fourth Circuit explained that an ALJ must "explicitly indicate the weight given to all relevant" IQ scores and "articulate the reasons underlying" the assignment of such weight. Murphy, 810 F.2d at 437 (remanding because ALJ rejected low IQ score "without explanation"); see also Lawson v. Apfel, No. 00-1361, 2000 WL 1709277, at *1 (4th Cir. Nov. 15, 2000) (affirming ALJ's decision that discounted IQ score obtained from one test and credited higher IQ score obtained from another test). Moreover, an ALJ may discount the result of an IQ test even if (1) that result is "valid" within the meaning of the Listings and/or (2) "it is the only such result in the record." Hancock, 667 F.3d at 474-475. In the context of conflicting IQ scores, this Court is "not at liberty to reweigh conflicting evidence . . . or substitute [its] judgment for that of the [ALJ]." Id. at 476.

The ALJ complied with his obligations under Murphy by (1) explicitly stating that he "question[ed] the validity of the IQ scores resulting from Ms. Walker's testing" (Tr. 34) and gave "substantial weight" to the 2008 Evaluation (Tr. 40) and (2) articulating his reasons for doing so. As the ALJ emphasized, Ms. Walker herself questioned the validity of the scores that she reported (Tr. 33-34). The ALJ noted that Ms. Walker "observed that during testing [Plaintiff's] motivation seemed poor, and he exhibited a 'no care attitude.' She questioned whether [Plaintiff's] seemingly weak motivation affected his scores." (Tr. 33, referring to Tr.

114).

The ALJ also emphasized the disparity between the 2008 Evaluation by Ms. Zhiss and Dr. Hargrow and the 2009 Evaluation by Ms. Walker, "particularly a 22 point drop in performance IQ in less than one year's time" Id.

The ALJ's determination is further supported by the opinions of three state agency doctors, all of whom concluded that Plaintiff did not meet Listing 12.05B. In December 2008, Dr. Lori Souther completed a Psychiatric Review Technique Form ("PRTF"), including a section specifically inquiring as to whether the claimant's condition meets Listing 12.05B (Tr. 381). Dr. Souther indicated that Plaintiff's condition did not meet that Listing. Id. In January 2009, Dr. Salley Jessee stated that she did not have any substantive disagreement with the PRTF. (Tr.401). In April 2009, Dr. Nancy Herrera affirmed the PRTF. (Tr. 403).

For these reasons, substantial evidence supports the ALJ"s finding that Plaintiff failed to establish that his condition met Listing 12.05B.

With respect to the first prong of Listing 12.05C, the ALJ correctly stated that Plaintiff did not have "a valid, verbal, performance, or full scale IQ of 60 through 70." (Tr. 34). With respect to the second prong of Listing 12.05C, the ALJ found that Plaintiff did not have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 34). Substantial evidence supports this finding as well.

The ALJ also found that "[n]either [Plaintiff] nor his mother has alleged that [Plaintiff] has any type of physical impairment that restricts his ability to perform work activities." (Tr. 34).

Plaintiff's mother testified that she "think[s]" her son "sometimes" "feels depressed" because he occasionally gets quiet or stays in his room with the door closed. (Tr. 97). The

ALJ found that Plaintiff did not suffer from depression, and that this "other mental impairment" did not impose an additional and significant work-related limitation of function. (Tr. 34).

The ALJ emphasized that "[d]uring [Plaintiff's] consultative psychological evaluation with Ms. Zhiss and Dr. Hargrow it was noted that his affect was bright, and that he did not appear depressed." (Tr. 34, referring to Tr. 373). Plaintiff later reported to the Agency that he had not been seen by any treating professional for any emotional or mental problems that limited his ability to work. (Tr. 300). In 2009, Ms. Walker reported that Plaintiff's mother said he recently felt "somewhat sad" (Tr. 13) and that his scores on the Beck Depression Inventory "indicated a mild level of depression." (Tr. 116), Ms. Walker also reported that Plaintiff's mother stated that he was not significantly depressed during the past couple of weeks. (Tr. 113). Although Ms. Walker diagnosed Plaintiff with dysthymic disorder (Tr. 119), that diagnosis requires "a low, dark, or sad mood on most days for at least 2 years."[7] The record does not document a condition of that duration. To the contrary, Ms. Zhiss and Dr. Hargrow's report from 2008 shows that Plaintiff did not describe such a mood during the year prior to Ms. Walker's evaluation. (Tr. 373). Plaintiff's mother testified that he "sometimes" felt depressed. (Tr. 97). Ms. Walker reported that his mood was average despite an affect that was "a bit blunted." (Tr. 114).

Plaintiff reported to Ms. Zhiss and Dr. Hargrow that he slept and ate well. (Tr. 34, referring to Tr. 373). Plaintiff testified that he did not tire frequently; that he did not take naps during the day; that he did not wake up frequently during the night; that he had not recently

---

[7]U.S. Nat"l Library of Med., http://www.ncbi.nlm.nih.gov/pubmedhealth/ PMH0001916/ (last updated Sept. 17, 2012).

gained or lost any weight; that he was eating well; and that he sometimes talks on the phone, goes to the gym and the mall, and plays basketball. (Tr. 37, 58-60, 83-84). His mother also reported to Ms. Walker that he goes to the library and chats with friends on the phone. (Tr. 113).

Plaintiff also reported to Ms. Zhiss and Dr. Hargrow that he did not take any daily medications for depression or any other condition. (Tr. 34, referring to Tr. 372). Plaintiff did not complain of depression to Ms. Zhiss and Dr. Hargrow and reported that he had never received mental health treatment. (Tr. 373).

Plaintiff's alleged depression imposed no significant work-related limitation of function. His education records establish that he was a "reliable and diligent worker"" – and, indeed, that he went "beyond expectations" – when he performed cleaning services at Carowinds (Tr. 40, quoting Tr. 280). Plaintiff testified that his duties at Carowinds were easy; that he was able to work as quickly as needed; and that he had no problems with his supervisor or co-workers. (Tr. 37, referring to Tr. 73-74). Plaintiff testified that he stopped working at Carowinds because he refused to cut his hair as directed by his employer. (Tr. 73). Plaintiff further testified that he knew he was going to lose his job at Carowinds if he refused to cut his hair. (Tr. 73-74). Ms. Walker recommended that Plaintiff participate in job training through vocational rehabilitation. (Tr. 119).

Finally, three state agency doctors concluded that Plaintiff did not meet Listing 12.05C. In December 2008, Dr. Souther wrote in the PRTF that Plaintiff''s condition did not meet that Listing. (Tr. 381). Dr. Souther further stated in the PRTF that Plaintiff did not suffer from depressive syndrome or any other affective disorder. (Tr. 377, 380). Doctors Jessee and Herrera affirmed the PRTF. (Tr. 401, 403).

Plaintiff argues that the ALJ should have given greater weight to Ms. Walker's opinion, expressed in the 2009 Evaluation, that he suffered from dysthymic disorder (Tr. 119) and "a mild level of depression." (Tr. 116). In addition to the substantial evidence discussed above that supports the ALJ's conclusion, the governing regulation provides that the Agency requires evidence from a licensed or certified psychologist concerning impairments such as dysthymic disorder and depression. 20 C.F.R. § 416.913(a)(2) (2012). Ms. Walker is not a licensed or certified psychologist (Tr. 119) and thus is not an "acceptable medical source" within the meaning of the governing regulation.

For these reasons, substantial evidence supports the ALJ's finding that Plaintiff failed to establish that his condition met Listing 12.05C.

For similar reasons, the ALJ did not abuse his discretion in not ordering a second consultative examination or obtaining testimony from a V.E. Plaintiff never requested a second consultative examination prior to the issuance of the hearing decision. "[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination." Bishop v. Barnhart, 78 F. App"x 265, 268 (4th Cir. 2003). The governing regulation further provides that the ALJ "may" or "might" decide to obtain a consultative examination "when the evidence as a whole is insufficient to support" a decision or in order to "try to resolve an inconsistency in the evidence." 20 C.F.R. § 416.919a(b) (2012) (emphasis added). Plaintiff did not complain of depression during his December 2008 consultative examination with Ms. Zhiss and Dr. Hargrow. Instead, he reported that he never had mental health treatment (Tr. 373) and did not take any daily medication for depression (Tr. 372). The consultative examiners did not diagnose Plaintiff with depression. To the contrary, they reported that his affect was "bright" and that "he did not appear depressed." (Tr. 373). The ALJ gave substantial weight to Ms. Zhiss and Dr. Hargrow"s

report (Tr. 40). Nothing in the record before the ALJ indicated that Plaintiff suffered from clinical depression subsequent to his consultative evaluation by Ms. Zhiss and Dr. Hargrow. Following Plaintiff's 2008 consultative examination, three state agency doctors all concluded that Plaintiff did not suffer from depressive syndrome or any other affective disorder. (Tr. 377, 380, 401, 403). All of those state agency doctors concluded that Plaintiff did not meet Listing 12.05C. (Tr. 381, 401, 403). In addition, Plaintiff's mother testified that he felt depressed only "sometimes" (Tr. 97) and she reported to Ms. Walker that Plaintiff had not felt significantly depressed recently (Tr. 113). Plaintiff testified that he did not suffer from any common symptoms of depression. (Tr. 58-60, 83-84).

Plaintiff argues that even if he did not meet Listing 12.05, the ALJ should have obtained evidence from a V.E. when assessing his ability to perform a significant number of jobs. The ALJ found that Plaintiff retained "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: because of his borderline intellectual functioning he is limited to performing the simple, routine, repetitive tasks of unskilled work" (Tr. 36). The ALJ went on to find that Plaintiff retained the ability "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; to deal with changes in a routine work setting; to maintain attention and concentration to complete simple tasks; to sustain an ordinary routine without special supervision; to ask simple questions or request assistance; to be aware of normal hazards and take appropriate precautions; to use public transportation; and to perform simple, routine, repetitive tasks." (Tr. 42).

After noting that Plaintiff had no past relevant work experience, the ALJ reached the final step in the Agency's sequential evaluation process. (Tr. 41). The ALJ properly relied upon

Section 204.00 of the Medical-Vocational Guidelines ("Section 204.00" of the "Grid"), along with Social Security Ruling 85-15 ("SSR 85-15"), 1985 WL 56857, which contains formal guidance from the Commissioner. (Tr. 41-42).

Section 204.00 provides in pertinent part that a claimant with no exertional limitations possesses "substantial work capability for jobs in the national economy at all skill and physical demand levels." Plaintiff concedes that he has no exertional limitations. The ALJ thus correctly stated that Section 204.00 "provides a framework for decision making." (Tr. 41). See, e.g., Goffron v. Astrue, 859 F.Supp.2d 948, 960-961 (N.D.Ill. May 2, 2012) ("As Claimant has no exertional limitations, the ALJ properly referred to section 204.00 of the Grid", rejecting argument that ALJ's decision not to obtain vocational evidence was error). Moreover, the ALJ accounted for the Plaintiff's intellectual limitations by applying a non-exertional restriction to simple routine repetitive tasks. There is substantial evidence that Plaintiff was capable of performing a range of jobs as contemplated in Section 204.00. Accordingly, the ALJ's decision to proceed without V.E. testimony is supported by substantial evidence.

After the ALJ issued his decision, Plaintiff submitted two new documents to the Appeals Council. (Tr. 10-14, 16-20). The governing regulation provides that the Appeals Council will review evidence that was not before the ALJ if it satisfies three requirements. The evidence must be "new," "material," and "relates to the period on or before the date of the administrative law judge decision." 20 C.F.R. § 416.1470(b) (2012). The Appeals Council denied Plaintiff's request for review because the new evidence submitted by Plaintiff did not satisfy the final requirement. "The Administrative Law Judge decided [Plaintiff's] case through May 13, 2010. This new information is about a later time. Therefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before May 13, 2010" (Tr. 2).

13

The ALJ issued his decision in May 2010 (Tr. 42), relying upon evidence generated at or before the hearing in January 2010. The new evidence consisted of an October 2010 evaluation by Dr. Morris Britt, (Tr. 16-20) and a February 2011 evaluation by Dr. Warren Steinmuller, (Tr. 10-14). Neither evaluation relates to the time period at or before the decision.

Both evaluations suggest that Plaintiff's condition may have deteriorated after the ALJ issued his decision in May 2010. Dr. Steinmuller noted that Plaintiff reported difficulty falling asleep, awakening early, and a decreased appetite. (Tr. 11). However, a few months before the May 2010 hearing decision, Plaintiff testified that he was not frequently tired; did not take naps during the day; did not wake up frequently at night; had not recently gained or lost any weight, and that he was eating well. (Tr. 83-84). The lowest IQ subtest score reported in the October 2010 Britt Evaluation (Tr. 18) is twenty-three points below the lowest IQ subtest score reported by Ms. Zhiss and Dr. Hargrow in December 2008. (Tr. 374) and seven points below the lowest IQ subtest score that Ms. Walker reported in October 2009 (Tr. 115).

Plaintiff argues is that "[t]he plain language" of both documents "indicates that each is relevant to [Plaintiff's] condition prior to the date of the ALJ decision." Dr. Britt's recitation of Plaintiff's background, education, and work history is the only part of the record supporting this contention. This simple recitation of past history does not establish that Dr. Britt's evaluation relates to the period prior to the decision.

The Fourth Circuit has explained that new evidence is material only if it would "so substantially alter the weight of the evidence as to indicate that a reasonable mind could not find the evidence adequate to support a finding by the ALJ of no disability." <u>Jones v. Dep't of Health and Human Servs.</u>, No. 97-1107, 1998 WL 85408, at *3 (4th Cir. Feb. 27, 1998). Dr. Steinmuller's February 2011 evaluation does not meet this standard. As noted above, dysthymia

requires "a low, dark, or sad mood on most days for at least 2 years." Plaintiff's mother testified in January 2010 (less than two years before Dr. Steinmuller's evaluation) that Plaintiff was not depressed on most days but instead felt depressed only "sometimes." (Tr. 97). Plaintiff's mother also reported to Ms. Walker in October 2009 that Plaintiff had not felt significantly depressed during the past couple weeks. (Tr. 113). Ms. Zhiss and Dr. Hargrow noted in December 2008 (twenty-six months before the Steinmuller Evaluation) that Plaintiff "did not appear depressed." (Tr. 373).

For these reasons, the Appeals Council properly denied Plaintiff's request for review based upon the documents generated after the ALJ's decision.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #12) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.,

**SO RECOMMENDED AND ORDERED**.

Signed: March 21, 2013

David S. Cayer
United States Magistrate Judge